STATE of Missouri, Respondent,

v.

Billy Joe GARRETT, Appellant.

No. 9554.

Missouri Court of Appeals, Springfield District.

March 21, 1974.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Spec. Asst. Atty. Gen., St. Louis, for respondent.

Albert G. Tindall, Charleston, for appellant.

BILLINGS, Judge.

This appeal is another chapter in the continuing and seemingly never-ending saga of Billy Joe Garrett and his days in courts since his conviction for first degree robbery in New Madrid County in December of 1965 and sentencing as a habitual criminal on January 25, 1966.[1] He now appeals from resentencing under the Second Offender Act, § 556.280, RSMo 1969, V.A.M.S. because the 50-year term he received is the same prison term originally imposed. We affirm.

In order to view defendant's contention in proper perspective it is necessary that we recount portions of previous proceedings, commencing with the original conviction, judgment and sentence. In the robbery trial the defendant, his brother Lonnie, and Sam Irby were jointly charged and tried for the crime. Prior convictions were alleged as to all three men and evidence was received by the court concerning the convictions. Following guilty verdicts the trial judge imposed sentences under what is commonly called the Habitual Criminal Act. The defendant was sentenced to a term of 50 years, Sam Irby received a 40-year sentence, and Lonnie Garrett was sentenced to a term of 30 years in the penitentiary.

On their first appeal [State v. Garrett, 416 S.W.2d 116 (Mo.1967)] the Supreme Court concluded that the trial court had not made sufficient findings of record as to the applicability of the Second Offender Act and reversed and remanded the case for a resolution of that issue. On remand proper findings as to the applicability of the Second Offender Act were made by the judge and, after granting allocution, all three of the defendants were resentenced to the identical terms in prison initially imposed.

In their second appeal [State v. Garrett, 435 S.W.2d 662 (Mo.1968)] the prior convictions considered by the trial court were enumerated by the appellate court and insofar as applicable to Billy Joe Garrett were as follows: 1952 Mississippi County, Missouri, conviction and three-year sentence for breaking jail; 1954 conviction and 18-month sentence in Louisiana for aggravated burglary; 1959 Louisiana conviction and sentence of life imprisonment for murder.[2] The Supreme Court affirmed the judgment of the trial court.

Following the denial of their second appeal the defendant, Lonnie and Irby filed their joint post-conviction motion under Rule 27.26, V.A.M.R. A common ground alleged by all three movants was that to each of them one of the prior convictions relied upon by the trial court in applying the Second Offender Act was constitutionally infirm under Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), because they had not waived their right to counsel and were not represented by an attorney. Defendant made this claim as to the 1952 Mississippi County conviction, Lonnie as to a 1959 conviction and Irby as to a 1956 conviction. A special judge conducted an evidentiary hearing and denied their motion.

1. As near as we can determine from the record in this case and reported opinions this appeal marks the eleventh judicial proceeding involving the original sentencing. Court-appointed attorneys number at least seven; four different Missouri circuit judges have conducted various hearings; there have been three prior appeals to and a motion to vacate judgment filed directly in the Missouri Supreme Court; and, habeas corpus proceedings in a federal district court and an appeal to the federal court of appeals.

2. Defendant escaped from the Louisiana penitentiary and a detainer on behalf of the Louisiana authorities has been filed with Missouri.

In the third appeal [Garrett v. State, 459 S.W.2d 378 (Mo.1970)] the Missouri Supreme Court affirmed the denial of relief to the defendant and Irby by ruling as follows at page 380: "The insuperable difficulty with the claims of Billy Joe and Sam is that in the robbery case the state alleged numerous other felony convictions and these convictions with counsel were proved and found in the principal trial by the judge as well as upon this 27.26 proceeding and they are not challenged here . . . . In these circumstances as to Billy Joe and Sam, their cases having been tried in 1966 after the amendment of the habitual criminal act in 1959 . . . the prior offenses were not found by or submitted to the jury, they were separately found by the court and Burgett v. Texas has no application . . ."[3]

The scenario now shifts to the harbor of the federal courts where many a prisoner, marooned in state judicial waters, has found safe refuge at the dock of habeas corpus. Defendant sought relief from his robbery conviction in the United States District Court, Eastern District, Southeastern Division [Garrett v. Swenson, 331 F. Supp. 1197 (1971)] but was again cast adrift when that court ruled the Missouri Supreme Court had adequately disposed of his contention concerning the 1952 Mississippi County conviction. From the United States Court of Appeals [Garrett v. Swenson, 459 F.2d 464 (8th Cir. 1972)] the light of United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) was focused on defendant's plight. Thus illuminated, defendant's case was remanded for an evidentiary hearing on the question of counsel or no counsel in the 1952 conviction. The Eighth Circuit said the reasoning of our Supreme Court and the District Court could not be squared by *Tucker*

which held that a sentence tainted by a trial judge's consideration of a constitutionally invalid conviction could not stand. The opinion noted that the question of counsel for defendant at his 1952 conviction was then being considered by a Missouri court in a coram nobis proceeding and if the facts were adequately developed in the state court the District Court could resolve the question on the state court's record.

From the briefs and transcript filed herein we learn that in September of 1972 the Mississippi County Circuit Court (another special judge presiding) determined in a coram nobis proceeding that defendant had been "improperly tried and sentenced on February 12, 1952, for jail breaking and ordered [defendant] released from that sentence." In January of 1973 the state filed a motion to vacate the court's judgment in 459 S.W.2d 378 as applicable to defendant. The court sustained the motion and ordered that pursuant to an order of the United States District Court the Circuit Court of New Madrid County set aside the defendant's sentence and resentence him on his robbery conviction " . . . [W]ithout any consideration being given to the prior conviction in 1952 for jail break by the Circuit Court of Mississippi County . . . or any other constitutionally invalid prior conviction . . . . "

Another special judge, the Honorable Stanley A. Grimm, was appointed by the Supreme Court to conduct the resentencing hearing. Counsel was appointed for the defendant and pursuant to notice to all interested parties, Judge Grimm set aside the previous sentence, heard evidence, and by reason of the two prior valid convictions of defendant in Louisiana resentenced the

---

3. The court ordered an evidentiary hearing to be held on Lonnie Garrett's contention regarding a 1959 Mississippi County conviction. A special judge denied relief and he appealed to the Supreme Court. It was this appeal that resulted in the now famous case of Garrett v. State [481 S.W.2d 225 (Mo.

banc 1972)] whereby the Missouri Court of Appeals acquired jurisdiction for the first time in appeals involving "offenses punishable by a sentence of death or life imprisonment". Lonnie Garrett's case was transferred to this court and his appeal denied in Garrett v. State, 503 S.W.2d 45 (Mo.App.1973).

defendant under the Second Offender Act and set his prison term at 50 years. Judge Grimm's order gave the defendant credit for the jailtime and prison time previously served in connection with the robbery charge and correction. In arriving at the sentence and judgment Judge Grimm expressly stated and the judgment recites that his decision was made without any consideration being given to defendant's conviction in Mississippi County in 1952.

In view of the singular point presented by defendant's appeal and the limited purpose of the order for resentencing, we do not deem it necessary to detail the evidence considered by Judge Grimm and contained in the transcript. Suffice it to say that the special judge gave the defendant and his counsel the widest latitude possible with no visible limits as to the scope of the hearing.[4] By agreement the trial transcript and the transcript of his previous 27.26 motion were considered by the special judge. Defendant freely admitted his two prior felony convictions in Louisiana.[5] The court explored the defendant's background at length and in reply to the court's question "Is there anything else that you would like to tell me that I should consider in determining what sentence I should give you?" the defendant replied: "Well, no, sir, I just figured I've had a fair and honest hearing and I think I'm just going to leave that up to you." Again, " . . . I think I have had a fair and honest hearing and that's all I ask."

Defendant's complaint in this appeal is that Judge Grimm was prejudiced by the fact that the set-aside Mississippi County conviction was mentioned several times throughout the two-day hearing and that this prejudice is evidenced by Judge Grimm sentencing him to 50 years—the same prison term that he originally received. " . . . [T]he repetition of the exact sentence was not a coincidence but an abuse of discretion and tainted by consideration of evidence which should have been excluded from consideration" says the defendant. He argues that contrary to Judge Grimm's express declaration that the 1952 conviction was not considered in arriving at the sentence, the special judge did take into consideration the invalid conviction. This conclusion arsies from the present sentence being for the same term of years as the original sentence in 1966. Defendant also notes that Judge Grimm did not credit him with the prison time served on the 1952 conviction and contends this failure on the part of the special judge was "unconscionable". Defendant suggests that another special judge conduct his resentencing "to whom the invalid prior conviction is unknown or at least not a prominent part of the record."

We have carefully reviewed the transcript herein and do not agree with defendant's contention that the 1952 conviction is "a prominent part of the record." The 1952 conviction was only briefly referred to on five occasions. The first occurred when it was developed from the defendant that at the time of the original sentencing he had three prior convictions but that he no longer had the 1952 conviction. The second mention of the 1952 conviction was during the course of Judge Craig's examination by the defendant when the judge was asked if he was aware the conviction had been set aside. The third reference was when defendant was examining his former trial attorney (Mr. Bock) concerning the orginal trial transcript and the fact that it contained information about the 1952 conviction. The next men-

---

4. Defendant was permitted to testify at length. In the main his testimony was directed towards his trial attorney (Mr. Bock), the prosecuting attorney (Mr. Hunter), the trial judge (Judge Ragland), and the special judge (Judge Craig), who denied his Rule 27.26 motion, and he called as witnesses all of these individuals.

5. A 1969 conviction and five-year sentence from Cole County for stabbing a fellow inmate at the penitentiary was revealed by defendant but not considered by the court as a "prior conviction" in defendant's resentencing.

tion of the 1952 conviction was during the defendant's relating his background to the court (the judge specifically stating "that offense had been thrown out so I'm not interested in that one at all. When did you have your first offense disregarding that particular one at Charleston?"). The last reference to the 1952 conviction took place when defendant's attorney was inquiring of the defendant and the following occurred:

"Q. Getting back to the Charleston incident back in 1952—(interrupted)

BY THE COURT: Well, Mr. Rost, I don't really want to hear any testimony concerning that '52 Charleston event.

MR. ROST: I simply wanted to hear how much time he has done, Your Honor.

BY THE COURT: Oh, O.K. To me that is out of the record and he is not convicted of that.

MR. ROST: I felt if he was not constitutionally informed [sic] he may have done some time which the Court may want to consider.

BY THE COURT: Well, do you have any objection to telling me that that Mr. Rost is asking you?

A. What was that, Mr. Rost?

Q. (By Mr. Rost) Did you do any time, did you serve any time in the penitentiary or in the Mississippi County jail for that offense?

A. Oh, yes, sir, I did. For the offense in Charleston, Missouri?

Q. Yes?

A. Yes, sir, I served three years in Jefferson City, Missouri.

BY THE COURT: You served the full three years?

A. No, sir, well, I stayed twenty-three months on the three years, which is good time.

BY THE COURT: All right."

It is difficult for us to conceive how any judge could conduct defendant's resentencing without being made aware of the 1952 Mississippi County conviction. Its invalidity is the sole basis for resentencing. The Supreme Court order directs the judge conducting the resentencing proceeding to eliminate from consideration the "prior conviction in 1952 for jail break by the Circuit Court of Mississippi County . . . ."

The record in this case does not support the defendant's assertion that Judge Grimm was biased and prejudiced against him and is completely barren of any facts giving rise to such a charge. As we have previously indicated the slight references to the 1952 conviction were no more or no less than the Supreme Court's order authorizing the resentencing procedure. In any event, we hold the references to the Mississippi County conviction did not "taint" the proceedings below and form no basis for the allegations of bias and prejudice against Judge Grimm.

The defendant had two valid prior convictions and the Second Offender Act was applicable to defendant's resentencing. Judge Grimm made a judicial determination, based on evidence which included the original trial transcript, that defendant should receive a 50-year sentence. The statute under which defendant was prosecuted, § 560.135, RSMo 1969, V.A.M.S. provides: "Every person convicted of robbery in the first degree by means of a dangerous and deadly weapon shall suffer death, or be punished by imprisonment in the penitentiary for not less then five years . . . ." The defendant's sentence is within the limits prescribed by statute and as was held in State v. Vermillion, 486 S.W.2d 437 (Mo.1972) at p. 441. " . . . a sentence within the limits prescribed by statute does not warrant an appellate court to interfere with it."

The judgment is affirmed.

HOGAN, C. J., and STONE and TITUS, JJ., concur.